## SHOLL DENTAL LABORATORY CO. v. McKESSON & ROBBINS, Inc.

### Patent Appeal No. 5024.

Court of Customs and Patent Appeals.
June 22, 1945.

E. V. Hardway, of Houston, Tex. (Percy H. Moore, of Washington, D. C., of counsel), for appellant.

Samuel Herrick, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'Connell, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents, 60 USPQ 379 (speaking through an assistant commissioner), reversing the decision of the Examiner of Trade-Mark Interferences and sustaining the opposition of appellee to the application of appellant for the registration of the notation "Calle" as a trade-mark for dentures of its (appellant's) manufacture.

Appellant's application was filed in the Patent Office June 15, 1942, use of the mark being alleged "since the 1st day of January, A. D. 1939."

The opposition is based upon appellant's ownership of a mark consisting of the word "Calox," used on tooth powder, which was registered in the Patent Office (Certificate No. 42,921), June 28, 1904, the registration being renewed in 1934.

No testimony was taken in the case, but in lieu thereof a joint stipulation was submitted, the purport of which is, that appellant (applicant) is a corporation organized in 1924 under the laws of the State of Texas, having a place of business at Houston, Texas; that since its organization it has been engaged in the manufacture of dentures, or artificial teeth, which it has been supplying "to dentists only and not to individual users or the public generally"; that since January 1, 1939, it has been selling the goods under the trademark "Calle" which is affixed to the goods "only by printing the trade mark on the containers or packages in which the goods are sold," and that appellee (opposer) "has, for many years prior to 1939 been engaged in making and selling tooth powder and tooth paste, under the trade mark Calox.

both to the general public and to dentists, and in interstate commerce, and has expended millions of dollars in advertising said product throughout the United States."

As stated in the decision of the Examiner of Trade-Mark Interferences:

"The allegations contained in the notice of opposition relate to only the confusion in trade clause of Section 5 [of the Trade-Mark Registration Act of February 20, 1905, as amended, 15 U.S.C.A. § 85] as a statutory ground for negativing the right of registration (Section 7, 15 U.S.C.A. § 87) claimed by the applicant."

It was the view of the examiner that although the products of the respective parties might be used conjointly, "that is, that opposer's tooth powder or tooth paste might be used to clean applicant's dentures," nevertheless "the fact of conjoint use is not controlling in the question of the descriptive properties of the goods," our decision in the case of Kraft-Phenix Cheese Corporation v. Consolidated Beverages Limited, 107 F.2d 1004, 27 C.C.P.A.,Patents, 803, being cited. He then continued:

"They [the goods] possess greatly dissimilar properties, are sold through widely different trade channels and are used for different purposes. Under these circumstances the examiner is persuaded that purchasers thereof would not reasonably assume that they had a common source of personal origin. The goods are therefore deemed to be of different descriptive properties."

In view of his conclusion that the goods were of different descriptive properties, he held it unnecessary to consider the similarities of the marks but pointed out that they "have certain differences in their endings," and expressed the opinion that even were the goods held to be broadly of the same descriptive properties, "nevertheless, the cumulative differences of the marks and the goods are such as to obviate any likelihood of confusion in trade."

The assistant commissioner was of opinion that the goods "are goods of the same descriptive properties in the statutory sense, being dental goods, the tooth powder and tooth paste being closely related to the dentures as cleaners therefor," and surmised that manufacturers of dentures "might be expected to also put out tooth powder and tooth paste either specially suited to the particular material of which the dentures are made or for teeth generally."

He further said:

"I do not think persons making a side-by-side comparison of the mark 'Calox' as applied to tooth paste or tooth powder and the mark 'Calle' as applied to a denture would be likely to be deceived. However the question is not so restricted. Consideration should also be given to whether persons of ordinary intelligence and prudence, acting merely on their memory of one or of both of the marks, and not making a side-by-side comparison of the marks as they are applied to the goods, would not be likely to mistake one mark for the other and thus be confused as to the origin of the goods.

"It is stipulated that applicant's dentures are sold only to dentists and the mark 'Calle' appears only on the cartons or packages. Thus it appears that after a patient has been fitted with a 'Calle' denture and informed of the trade-mark thereof the patient would have to rely merely on memory as to what the trade-mark of the denture was. It seems that such persons thereafter seeing the mark 'Calox' applied to tooth paste or tooth powder would be likely, due to the similarity in sound between the marks 'Calox' and 'Calle,' to be confused into thinking that 'Calox' was the trade-mark which was applied to the dentures, as they remembered the mark, and in consequence be mislead into believing the dentures and the tooth paste or tooth powder emanated from the same source. At least there is sufficient doubt in my mind that such confusion is not likely that resolving such doubts against the newcomer in the field, who is the applicant here, the marks when applied to the respective goods should be held to be confusingly similar and the notice of opposition sustained."

■ It seems to us that certain of the surmises of the assistant commissioner are somewhat remote from the facts shown by the stipulation actually to exist. There is nothing in the record which indicates that the applicant (appellant) manufactures and sells or contemplates the manufacture and sale of tooth powder or tooth paste, or that opposer (appellee) makes and markets, or contemplates making and marketing, dentures. The manufacture of dentures, or false teeth, is obviously a highly specialized art, and it may well be doubted whether the eventual user of dentures, except, perhaps, in rare cases where one has a curiosity which leads to inquiry, ever thinks of the manufacturer beyond the dentist who fits

them to his mouth, or ever learns of any trade-mark applied to them. There is, at least, no showing in the record upon this point.

So far as the record shows, both the marks are coined terms which have no dictionary definitions, and are devoid of any suggestiveness. It is probable that appellee's dentifrice product is generally known and called for as "Calox" just as certain camera outfits are known and called for as "kodaks." Also, it is a fair assumption that dentists order appellant's product as "Calle," or "Calle dentures." Both words are entireties. There is no separation of them into syllables and there is nothing to indicate that any portion of either mark constitutes a dominant feature of the whole.

We, therefore, are unable to agree with the assistant commissioner's conclusion that there is at least sufficient doubt to require application of the rule relative to a newcomer in the field. As we view it, the respective fields are distinct. At any rate, there is such a distinct difference between the goods and between the marks taken as a whole, that we are unable reasonably to anticipate likelihood of confusion in origin or in trade which might deceive purchasers.

Before us, appellee, although citing several cases, has relied principally, or at least has principally emphasized our decision in the case of Bon Ami Co. v. McKesson & Robbins, Inc., 93 F.2d 915, 25 C.C.P.A., Patents, 826, in which case appellee here was the losing party.

The controversy in that case (in the decision of which many authorities were cited) related to a conflict between the notation "Bon Ami" when applied to soap in cake and powder form and the notation "Shave-ami" which appellee here (also appellee there) sought to register as a trade-mark for shaving cream.

In that case we entertained no doubt as to the goods being, in fact, of the same descriptive properties, and it was our view that the presence of "Ami," a foreign word

having the well-known meaning of "friend," as a distinctive unit in both marks would likely lead to confusion. It is perfectly clear to us that the facts of the instant case are so different from the facts in that case that there is practically no analogy between them upon the critical or fundamental question here determined. In general the same is true of the other cases cited by appellee. The assistant commissioner cited no authorities in his decision.

We have quoted above the statement in the examiner's decision reading, "the fact of conjoint use is not controlling in the question of the descriptive properties of the goods," and we deem it proper to say that, while not controlling, conjoint use is a fact proper to be considered along with other facts present in particular cases. Our decision in the Kraft-Phenix Cheese Corporation case, supra [107 F.2d 1006], cited by the examiner, went no further than to hold that, under all the facts appearing in that case, we failed to find "any likelihood of confusion as to origin or that purchasers would be deceived, although products may be sold through common channels or used together." As a matter of fact, the products involved in that case (cheese and popcorn) were used together and were sold through common channels.

In the instant case the products of the respective parties (dentures and tooth powder) are not sold through common channels. That they may be used together —that is, that the tooth powder may be used on the dentures—is possible but that, in our opinion, does not render them goods of the same descriptive properties.

It is our view that upon the record here presented the examiner's action in dismissing the notice of opposition was correct, and, therefore, the decision of the commissioner is reversed.

Reversed.

BLAND and O'CONNELL, Associate Judges, dissent.