The KINGSFORD PRODUCTS
COMPANY, Plaintiff,

v.

KINGSFORDS, INC., et al., Defendants.

Civ. A. No. 86–2447–S.

United States District Court,
D. Kansas.

May 27, 1987.

Stephen M. Westbrook, The Clorox Co., Oakland, Cal., Bruce Keplinger, Payne & Jones, Chtd., Overland Park, Kan., for plaintiff.

John Anderson, Jr., Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction. A hearing was held before the Court on April 10, 1987. The parties offered evidence and submitted memoranda on the issues before the court. The court has reviewed the record and is now prepared to rule.

A party which seeks a preliminary injunction must satisfy the requirements set forth in *Lundgrin v. Claytor*, 619 F.2d 61

(10th Cir.1980). These four prerequisites are as follows:

(1) substantial likelihood that the movant will eventually prevail on the merits;

(2) a showing that the movant will suffer irreparable injury unless the injunction issues;

(3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Id.* at 63.

In this action, the plaintiffs filed a preliminary injunction requesting that said defendants be enjoined from further use of the trademarks Kingsford, Kingsfords, Kingsford's, Inc., or Stephen T. Kingsford, Inc., or any mark or term confusingly similar thereto. Plaintiff, The Kingsford Products Company, is engaged in the manufacture and distribution of various retail consumer products, including certain barbecue products. These products include charcoal briquets and wood chips for smoking and flavoring food. It has sold and offered its goods for sale under the trademark Kingsford since 1951. The plaintiff has acquired trademark registrations for charcoal briquets issued in 1953, charcoal briquets and charcoal wood chips and charcoal lighting fluid issued on October 30, 1979, registration in March of 1985 for charcoal briquets, and has obtained registration for barbecue sauce registered January 6, 1987.

On or about July 25, 1986, plaintiff entered into an agreement with Kansas City Masterpiece Products Co. (hereinafter Masterpiece) for the acquisition of the assets of Masterpiece. Since 1978, Masterpiece has produced and marketed a barbecue sauce under the trademarks K.C. Masterpiece and K.C. Masterpiece Original, both of which marks have become the property of plaintiff as the result of its acquisition of Masterpiece. The barbecue sauce is still sold under the trademark K.C. Masterpiece with the Kingsford trademark on the back of the bottle. The defendants' product bears the trademark Original K and Kingsfords, Inc. Plaintiff claims that defendants' use of the term Kingsfords is intended to capitalize and create an association between the trademark Kingsford and its barbecuing products.

In opposition to the motion for preliminary injunction, defendants claim that plaintiff does not have a trademark for this particular barbecue sauce. Defendants further claim that plaintiff is not using Kingsford to identify its barbecue sauce, rather it is capitalizing on the use of K.C. Masterpiece's prior trademark. Finally, the defendants claim that there is no confusion which results from their use of the name Kingsfords, Inc. on their Original K barbecue sauce.

## SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

The court notes that defendants have claimed that plaintiff does not have a registered trademark for use of the term Kingsford for the barbecue sauce. In response, plaintiff claims that the plaintiff is the record owner of United States Trademark Registration No. 1,424,150, Kingsford for barbecue sauce registered January 6, 1987. This registration is prima facie evidence of the plaintiff's exclusive right to use the mark Kingsford on barbecue sauce. The plaintiff also states that trademark law does not restrict the protection provided to the Kingsford mark solely to the goods recited in the foregoing registrations.

Plaintiff brings its claim under 15 U.S.C. § 1114(1). 15 U.S.C. § 1114(1) imposes liability for the "use and commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark ... likely to cause confusion, or to cause mistake or to deceive...." *Id. See also Amoco Oil Company v. Rainbow Snow,* 748 F.2d 556, 557–58 (10th Cir.1984). In *Amoco,* the Tenth Circuit cited an earlier decision in *Avrick v. Rockmont Envelope Company* for the general rule that "[i]t is the generally accepted rule that a designation is confusingly similar to a trade-mark if an ordinary prospective purchaser, exercising due care in the circumstances, is likely to re-

gard it as coming from the same *source* as the trade-marked article." 748 F.2d at 558 (quoting *Avrick v. Rockmont Envelope Co*, 155 F.2d 568, 572 (10th Cir.1946)) (emphasis added).

In *Amoco,* the court cited to the factors listed in the Restatement of Torts § 729 (1938) which should be considered in determining likelihood of confusion. *Id.* at 558, n. 5. These factors are: degree of similarity, appearance, pronunciation of the words used, verbal translation of the pictures or designs involved, suggestion, tone of the actor in adopting the designation, the relation in use and manner of marketing between the goods or services marketed by the other, and the degree of care likely to be exercised by purchasers. The Tenth Circuit issued a mandate that a district court should not limit its inquiry only to the issue of confusion of source, but must consider potential confusion which might result from a belief in common sponsorship or affiliation. *Id.* at 559.

■ In the decision of *In re Martin's Famous Pastry Shoppe, Inc.,* 748 F.2d 1565 (Fed.Cir.1984) the court considered whether the goods in question traveled in the same channels of trade and were sold by the same retail outlets. The court found that although bread and cheese have distinct qualities, they are often used in combination. The court noted that such complimentary use has long been recognized as a relevant consideration in determining a likelihood of confusion. *Id.* at 1567 (citing *Sholl Dental Laboratory Co. v. McKesson & Robbins, Inc.,* 150 F.2d 718, 720 (D.Pa.1945)). The court found that the channels of trade, the types of stores, the commonality of purchasers and the conjoint use established an extensive pattern of complimentary interests. *Id.* at 1567–68. The court found that the complimentary nature of bread and cheese cannot be ignored. It further found that the association of identical trademarks with those products is likely to produce confusion when the products are not of common origin. *Id.* at 1567. It is equally clear that the fact that a product bears more than one trademark does not mean that each cannot

be a valid trademark. In fact, frequently, products have more than one trademark imprinted thereon. *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.*, 477 F.2d 150, 154 (6th Cir.1973) (citing *Carter–Wallace, Inc. v. Procter Gamble Co.*, 434 F.2d 794, 800 (9th Cir.1970), a product can bear more than one trademark).

In the decision of *E. Remy Martin & Co. v. Shaw–Ross International Imports,* 756 F.2d 1525 (11th Cir.1985), the Eleventh Circuit considered the issue of similarity of products and trademarks. The court found that the question is not whether the purchasing public can readily distinguish the products at issue, but rather whether the products are the kind the public attributes to a single source. *Id.* at 1530. The court recognized that the rights of the owner of a registered trademark are not limited to protection with respect to the specific goods stated on the certificate—but extend to any goods related in the minds of the consumers in the sense that a single producer is likely to put out both goods. *Id.*

■ Turning to the facts of the present case, it is undisputed in this case that the relevant markets are the same, as both products may be purchased at either a convenience store or grocery store. These products would also be sold to identical purchasers wishing to barbecue products using both the charcoal briquets and a barbecue sauce. The court further finds that there exists a similarity in advertising media. The court admitted into evidence numerous ads from the newspaper which placed barbecue items together.

After considering the factors listed in the Restatement of Torts § 729 (1938), the court finds that there is a likelihood that confusion results from a mistaken belief in the source of Original K being a product of The Kingsford Products Company. In so ruling, the court notes that it must determine "whether an ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods" would be confused. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir.1983). The court

finds that the evidence submitted as to the survey performed by Donald Hochanadel presents sufficient evidence that there is confusion among consumers as to the manufacturers of Original K. Although the court does not purport to offer an opinion as to the merits of the plaintiff's case, the court finds that the plaintiff has met its burden of proving the existence of a trademark, and that the defendants' use of Kingsfords, Inc. is likely to cause confusion in the marketplace concerning the source of Original K. *See Beer Nuts, Inc.,* 711 F.2d at 940.

█ The court further finds that defendants' defense that they are absolved from liability for infringement of the plaintiff's registered marks based on the use of Kingsfords as a family name is not supported by case law. *See Arthur Young, Inc. v. Arthur Young & Co.,* 579 F.Supp. 384, 389 (N.D.Ala.1983). In *Arthur Young, Inc.,* the court found that the company name had expended considerable efforts promoting its trademark and the services associated with the marks, thus entitling the marks to broad protection. *Id.* at 387. The court did not recognize a defense for use of a personal name as a trade name or service mark. Similarly, The Kingsford Products Company has been in business since the 1950's. Through extensive advertising throughout the years, the plaintiff has developed product recognition associating the name Kingsford to items relating to barbecue. *Cf. Scarves by Vera, Inc. v. Todo Imports, Ltd.,* 544 F.2d 1167, 1175 (2d Cir.1976) (Since Vera was the name of the founder, defendant was allowed to use that name in small type, but only in conjunction with other words which prevented the likelihood of confusion). In conclusion, the court finds that the plaintiff has adequately established that there is a likelihood that it will prevail on the issue of confusion. The court will now address the remaining three elements under the standard of *Lundgrin v. Claytor.*

## IRREPARABLE INJURY

█ The court notes that the likelihood of success is only one factor to be considered on a motion for preliminary injunction. Irreparable injury is equally important. *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984). In *GTE Corp.,* the court noted that some cases suggest that a preliminary showing of likelihood of confusion alone is a sufficient showing of irreparable injury to support a preliminary injunction. The court noted, however, that delay in seeking relief undercuts any presumption that infringement alone has caused irreparable harm. Such delay may justify denial of a preliminary injunction for trademark infringement. *Id.* at 678 (citations omitted).

The court notes that the defendants' first sale of Original K barbecue sauce occurred on July 10, 1986. The Kingsford Products Company did not sign the agreement to purchase K.C. Masterpiece until July 23, 1986. In September, 1986, the plaintiff first started selling the K.C. Masterpiece barbecue sauce. In plaintiff's memorandum in support of the motion for preliminary injunction, plaintiff states that on or about August 25, 1986, the defendants began advertising Original K barbecue sauce on the radio. The plaintiff has waited nearly 8 months before seeking any relief. Delay of this nature undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests there is, in fact, no irreparable injury. *GTE Corporation,* 731 F.2d at 678 (quoting *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 609 (S.D.N.Y. 1979) (footnote omitted)).

The court finds that the prominence of the name, Kansas City Masterpiece, which has a good reputation in the Kansas City area, and the use of a small logo of Kingsford on the back portion of the bottle also refutes plaintiff's contention that irreparable injury will be suffered if a preliminary injunction is not issued. *See GTE Corp.,* 731 F.2d at 679. The court also notes that the plaintiff has made no claims as to lost sales which have occurred since the marketing of Original K. In conclusion, the court finds that the plaintiff has not sufficiently established that irreparable injury

will result from the denial of a preliminary injunction.

## BALANCING THE HARDSHIP

The court finds that a preliminary injunction would impose substantial hardship upon the defendants. The defendants named in this case include a corporation and its incorporators, Stephen and Marianne Kingsford. It is a small family business, manufacturing and distributing Original K as its sole product. The granting of the preliminary injunction would effectively result in severe financial hardship for the defendants. Defendants' only alternative would be to remove their product from the market and/or replace the old labels after creating a new name for their corporation. *See GTE Corporation,* 731 F.2d at 679. The harm to Kingsford Products, Co. and the public cannot be materially aggravated by the defendants continued use of Kingsfords, Inc. on its Original K bottles in the interim. *Id.* (quoting *Ward Baking Company v. Oak Park Baking Co.,* 278 F. 627, 628 (D.Del.1922)). As the court noted in *GTE Corporation,* the burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief the plaintiff would obtain after a trial on the merits. *Id.* at 679 (citations omitted). The strong reputation of Kansas City Masterpiece in the market area versus the relatively short history of Original K tips the balance in favor of a denial of the injunction.

■ In view of the foregoing ruling, it is unnecessary to address the public interest in granting or denying the preliminary injunction. The court concludes that when the plaintiff has shown no specific harm other than the harm that is presumed to exist when there is the likelihood of confusion, the plaintiff's delay in bringing suit is an important factor in determining irreparable harm and in weighing the burden of hardships. The court finds that the plaintiff has not adequately established irreparable harm or that the threatened injury to the plaintiff outweighs the damage the pro-

posed injunction would cause the defendants.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff The Kingsford Products Company's motion for preliminary injunction is hereby denied.