WINNEBAGO TRIBE OF NEBRASKA; Sac and Fox Nation of Missouri in Kansas and Nebraska; Iowa Tribe of Kansas and Nebraska; Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas; HCI Distribution; John Blackhawk, Chairman of the Winnebago Tribe of Nebraska; Lance Morgan; Erin Morgan; and Earlene Hradec, Plaintiffs,

v.

Carla J. STOVALL, Attorney General for the State of Kansas; Stephen S. Richards, Secretary of the Kansas Department of Revenue; Steven Maxwell, Assistant Attorney General for the State of Kansas; Jeffrey Lochow, Director of Tax Operations; Jeffrey D. Scott, Designee of the Director of Taxation, Kansas Director of Revenue, Defendants.

No. 02–4070–DES.

United States District Court, D. Kansas.

May 17, 2002.

Evelyn Z. Wilson, Thomas E. Wright, Kevin James Grauberger, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, Bernle C. Durocher, Jr., Mary Johanna Streitz, Dorsey & Whitney, LLP, Minneapolis, MN, for Winnebago Tribe of Nebraska, John Blackhawk, Lance Morgan, Erin Morgan, Earlene Hradec.

Charley L. Laman, Topeka, KS, Thomas Weathers, Alexander & Karshmer, Berkeley, CA, for SAC and Fox Nation of Missouri.

Mark S. Gunnison, Payne & Jones, Chtd., Overland Park, KS, for Iowa Tribe of Indians of the Kickapoo Reservation in Kansas.

Brian R. Johnson, Office of Atty. General, Topeka, KS, John Michael Hale, Kansas Dept. of Revenue Bureau of Legal Services, Topeka, KS, for Cara J. Stovall.

Joseph Brian Cox, Jay Douglas Befort, Kansas Dept. of Revenue, Topeka, KS, for Stephen S. Richards.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on Plaintiffs' Motion for a Temporary Restraining Order (Doc. 4). Defendants have filed a Response to plaintiffs' motion (Doc. 19). Additionally, oral arguments were heard on this matter on May 15, 2002. The court has carefully reviewed the parties' arguments and is now prepared to rule.

## I. BACKGROUND

This litigation stems from defendants' attempt to enforce the Kansas Motor Vehicle Fuel Tax Act, Kansas Statutes Annotated §§ 79–3401 *et seq.* ("Act"), in regard to sales transactions between various plaintiffs. The Act imposes a tax, subject to various exceptions, on the use or the sale and delivery of motor vehicle fuel within the State of Kansas. Pursuant to § 79–3408(c) of the Act, the legal incidence of the fuel tax falls on the "distributor of first receipt." The distributor must compute and remit the tax each month for the amount of fuel received by the distributor in the State of Kansas.

Plaintiff HCI Distribution ("HCI") is a corporation organized under the laws of the Winnebago Tribe. HCI is wholly-owned and operated by Ho–Chuck, Inc., which in turn is wholly-owned by the Winnebago Tribe. According to the plaintiffs, the Winnebago Tribe, through HCI, manufacturers motor fuel on its reservations, and then sells the fuel to other Indian tribes for retail sales. HCI employed twenty-two people prior to the events giving rise to this law suit. HCI has since let go of five employees.

According to plaintiffs' filings with the court, the Winnebago Tribe purchases fuel from off-reservation pipeline stations in Nebraska and Iowa. The fuel is then transported to the Winnebago Tribe's storage

and blending facilities, which are located on the Winnebago Tribe's reservation in Emerson, Nebraska. Once the fuel is on the reservation, the Winnebago Tribe blends an alcohol additive into the gasoline. This blending process renders a fuel product with a higher octane rating.

On May 8, 2001, HCI applied for a Motor Vehicle Fuel and Special Fuel Importer/Exporter License ("Importer/Exporter License") and a Motor Vehicle and Special Fuel Distributor's License ("Distributor License") through the Kansas Department of Revenue ("KDOR"). KDOR returned the application for the Distributor License and informed HCI that the only license HCI needed was an Importer/Exporter License. KDOR issued HCI an Importer/Exporter License, effective May 4, 2001.

Plaintiffs Sac and Fox Nation of Missouri, Iowa Tribe of Kansas and Nebraska, and Kickapoo Tribe of Indians of the Kickapoo Reservation ("Kansas Tribes"), entered into contracts with the Winnebago Tribe through HCI for the purchase of fuel manufactured by HCI in August of 2001. According to the Winnebago Tribe, the fuel was sold to the Kansas Tribes on the Winnebago reservation. The fuel was then transported by fuel tanker from the blending facility on the Winnebago reservation to the fuel depots located on the reservations of the Kansas Tribes.

On September 10, 2001, shortly after Winnebago Tribe began selling fuel to the Kansas Tribes, HCI received a letter from KDOR stating that HCI, as a licensed importer under the Act, was required to report and remit Kansas fuel taxes on deliveries of fuel to any retailer in the State of Kansas. HCI responded to KDOR's letter stating that HCI is a wholly-owned, tribally-chartered corporation that enjoys all the privileges and immunities of the Winnebago Tribe, and, consequently, Kansas does not have the right to tax the sale of the fuel. On October 17, 2001, KDOR made a second demand for payment of the tax.

On April 8, 2002, KDOR working in conjunction with the Kansas Attorney General's office, submitted an affidavit and application for seizure of HCI property. On the following day, April 9, 2002, the defendants seized the following property without advance notice: two trucks, two tanker trailers, fuel and fuel oil, two black permit books and shipping papers. Simultaneously, KDOR entered orders for jeopardy assessment and issued tax warrants against HCI and the individual plaintiffs. Defendants Stovall and Maxwell also initiated criminal proceedings against plaintiffs HCI, Chairman Blackhawk and Lance Morgan. Currently, HCI, Chairman Blackhawk and Lance Morgan are required to appear in state court for arraignment on June 5, 2002.

Plaintiffs have initiated this action against defendants, seeking injunctive and declaratory relief. Currently before the court is plaintiffs' motion for a temporary restraining order. Plaintiffs' motion seeks an order from this court temporarily restraining defendants' enforcement of the motor fuel tax as it applies to plaintiffs. Plaintiffs also request the court to order the defendants to return the seized property and enjoin the defendants from pursing actions pending in state court.

## II. STANDARD FOR REVIEW

■ The issuance of a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court. *Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 354 (10th Cir.1986). When the opposing party has been notified and a hearing is held prior to the issuance of the temporary restraining order, the specific requirements of Rule 65(b) of the

Federal Rules of Civil Procedure, including the ten-day limitation on the duration of such an order, do not apply. In deciding whether to grant a motion for temporary restraining order, the court follows the same procedure as would be followed in deciding a motion for preliminary injunction.

■ To obtain a preliminary injunction or a temporary restraining order in federal court, the movant has the burden of establishing that: (1) the party will suffer irreparable injury unless the motion is granted; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits. *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998).

■ Defendants argue that issuance of a temporary restraining order will alter the status quo. If indeed issuance of a temporary restraining order would alter the status quo, the court must employ a heightened standard and find that the traditional four factors weigh heavily and compellingly in favor of granting the motion. *See SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir.1991). In making this argument, defendants contend that under the status quo the State of Kansas is free to collect the fuel tax. The term status quo, however, is not defined by the parties existing legal rights. Instead, it is "defined by the *reality* of the existing relationship between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *SCFC ILC*, 936 F.2d at 1100 (emphasis in original) (alternatively defining status quo as the "last uncontested status between the parties

which preceded the controversy ...."). *See also Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir.2001). In the case currently before the court, the reality of the relationship between the parties existing prior to the time the lawsuit was filed was that plaintiffs HCI and Winnebago Tribe brought fuel into the State of Kansas without paying fuel taxes. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir.2001) ("The preliminary injunction issued by the district court in essence 'froze' that moment in time, giving (temporary) validity to the tribal registrations and titles already issued ....."). In accordance with Tenth Circuit decisions, the temporary restraining order issued by the court will take a snap shot of the parties' relationship existing prior to the time the lawsuit was filed.

■ Because the court finds that issuance of a temporary restraining order would not alter the status quo, the court will employ the traditional test for issuance of a temporary restraining order. In accordance with the traditional test, if the moving party satisfies the first three elements, the standard for meeting the fourth requirement, likelihood of success on the merits, generally becomes more lenient. If indeed plaintiffs establish the first three elements, they "need only show that the issues are so serious, substantial, difficult, and doubtful as to make them fair ground for litigation." *Zsamba ex rel. Zsamba v. Community Bank*, 56 F.Supp.2d 1207, 1210 (D.Kan.1999) (quoting *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir.1992)).

## III. DISCUSSION

### A. Irreparable Injury

■ A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after

a full trial because damages would be inadequate or difficult to ascertain. *Tri–State Generation & Transmission Ass'n, Inc., v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1354 (10th Cir.1989). In this case, each plaintiff argues they have and will suffer injury that cannot be adequately remedied at law.

Winnebago Tribe and HCI argue that they have suffered irreparable injury for several reasons. First, it is argued that the seizure of HCI's trucks, tankers, and fuel, has rendered the Winnebago Tribe unable to conduct business. According to Winnebago Tribe's briefing, the seizure of their property has resulted in loss of revenues and profits, which are used for services for the Winnebago tribal members including police service, fire service, health care service and educational services. Winnebago Tribe additionally argues that as a result of defendants' actions, its primary supplier of alcohol-the key ingredient to the manufacturing process-has refused to sell to the HCI. Further, Winnebago Tribe's access to credit has apparently been almost destroyed due to defendants' actions.[1] Finally, Winnebago Tribe argues that mere seizure of tribal assets is sufficient to demonstrate irreparable injury. *See Hoover,* 150 F.3d at 1171.

The Kansas Tribes argue that the defendants' actions have left them without a supplier of motor vehicle fuel, resulting in lost sales and profits. Without such revenues, the tribes argue, they will be unable to fund tribal government programs and government services for tribal members. The Kansas Tribes further argue that defendants' actions have interfered with their inherent right to trade with other Indian nations free from state interference and taxation.

Plaintiffs Blackhawk and Lance Morgan face criminal prosecution as well as seizure of their personal property by defendants. Plaintiffs Erin Morgan and Earlene Hradec both face seizure of their personal property. These plaintiffs argue that such seizure of their personal property and criminal prosecution are clearly sufficient to satisfy the irreparable injury element.

The court finds that plaintiffs have demonstrated that they will suffer irreparable injury in that monetary damages will not be sufficient to undo the damage with which plaintiffs are currently faced.[2] Therefore, plaintiffs have met their burden as to this issue.

### B. Harm to Opposing Party

 Plaintiffs argue that if the temporary restraining order is issued, the harm faced by the defendants is negligible compared to the harm caused to plaintiffs if

---

**1.** Affidavits attached to plaintiffs' pleadings indicate that two of HCI's banks have halted all future lending activities due to the seizure of HCI's property. Additionally, Dun & Bradstreet Information Services has downgraded HCI and Ho–Chuck's rating from "good" to "non-rating." This "non-rating" status has apparently resulted in cancellation of business account credit cards. (Morgan Supplemental Aff. at 2–3).

**2.** The court acknowledges defendants claim that *Sac and Fox Nation v. Pierce,* 213 F.3d 566, 584–85 (10th Cir.2000), clearly holds that lost revenues and profits due to the state's motor fuel tax is insufficient to support

the plaintiffs' claim of irreparable injury. The defendants, however, confuse the scope of the Tenth Circuit's opinion. In *Sac and Fox,* the Tenth Circuit's discussion of tribal lost profits was in the context of whether the tribe's interest in profits was sufficient to overcome the state's interest in taxation. This balancing of interests went to the merits of the tribe's claims, not to whether they would have suffered irreparable injury had the injunction not been issued. Clearly, if it is found that the State of Kansas is unlawfully enforcing the motor fuel tax against plaintiffs, they will have suffered injury that cannot be redressed by a damage award.

the temporary restraining order is not issued. If the temporary restraining order is not issued, plaintiffs argue they will suffer a loss of revenue; additional loss of jobs at the HCI processing plant; loss of essential government functions and services; loss of reputation, business relationships, creditworthiness, and goodwill; and criminal charges and seizure of personal property as to the individual plaintiffs. Plaintiffs argue that in contrast to the vast losses they are confronted with, defendants will only lose one third of one percent of the total amount of revenue produced by the fuel tax. Defendants argue that they will lose revenue, but more importantly, the State of Kansas' sovereign right to enforce its civil and criminal laws is at stake. The court agrees that a final order granting the relief requested could very well adversely affect the State of Kansas' sovereignty, but in terms of the standard for issuing a temporary restraining order, plaintiffs are faced with more devastating losses than the states temporary inability to enforce its fuel tax law. The court finds that plaintiffs have demonstrated the harm suffered by defendants, if a temporary restraining order is issued, is negligible compared to the harm faced by plaintiffs if the order is not issued.

### C. Public Interest

■ In urging the court to find issuance of the temporary restraining order is not against the public interest, plaintiffs note that this court has previously held that the public has a strong interest in assuring the continued presence of social services, public safety and educational programs that benefit tribal members. *Sac and Fox Nation of Missouri v. LaFaver*, 905 F.Supp. 904, 907–08 (D.Kan.1995). In the same opinion, this court also stated that the public has a significant interest in assuring the viability of tribal self-government, self-sufficiency, and self-determination. If the defendants are allowed to

continue their current actions against plaintiffs, it is argued that services could be lost and that the viability of tribal self-government, self-sufficiency, and self-determination are in jeopardy.

The court finds that issuing the temporary restraining order in this case would not be contrary to public interest. Thus, plaintiffs have met their burden as to this issue.

### D. Likelihood of Success on the Merits

■ Because plaintiffs have established the first three requirements for issuance of a temporary restraining order, plaintiffs need only show that the issues presented are so serious, substantial, difficult, and doubtful as to make them fair ground for litigation. *Zsamba*, 56 F.Supp.2d at 1210 (citing *Resolution Trust*, 972 F.2d at 1199).

Although plaintiffs' complaint contains nineteen counts, plaintiffs focus on Count I, Counts IX–X, and Counts II–IV, as those counts which are likely to succeed on the merits. Plaintiffs' arguments as to each of these counts will be discussed in turn.

1. Count I—The legal incidence of the tax falls on the Kansas Tribes and therefore the tax is *per se* invalid as a matter of law.

The fuel tax provided for in the Act falls upon the "distributor of first receipt." Kan. Stat. Ann § 79–3408(c). *See also Sac and Fox*, 213 F.3d at 578–79 (holding that the legal incidence of the Kansas fuel tax falls on the distributor as a matter of federal law). In *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 453, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995), the Supreme Court held that if the legal incidence of a state tax falls upon a tribe or tribal members for sales made within Indi-

an country, the imposition of the tax is categorically barred as a matter of federal law. Under *Chickasaw Nation,* plaintiffs argue that the Kansas fuel tax is *per se* invalid, as applied to plaintiffs, because the legal incidence of the tax must fall on the Kansas Tribes.

In reaching this conclusion, plaintiffs argue that the incidence of the tax does not fall on Winnebago Tribe and HCI, therefore, it must fall on the Kansas Tribes. If Winnebago Tribe and HCI are to succeed in this argument, HCI must not be considered a distributor as defined by the Act. HCI argues that it is not a "distributor" as the term is defined in § 79–3401(f) because HCI sells and delivers fuel to the Kansas Tribes *before* it comes to rest or storage within Kansas. HCI further bolsters this argument by turning the court's attention to the fact that KDOR refused to issue a distributors license to HCI. If HCI is not a "distributor of first receipt," argues plaintiffs, then the Kansas Tribes are the distributors of first receipt and the tax is therefore *per se* invalid in accordance with *Chickasaw Nation.*

Defendants argue that based on the plain language of the Act, Winnebago Tribe and HCI are distributors within the meaning of the Act and therefore must remit fuel tax to the State of Kansas. Defendants maintain that HCI is a distributor as defined by Kansas Statutes Annotated § 79–3401(f)(1) in that it "imports or causes to be imported from any other state ... motor vehicle fuels ... for sale and delivery therein ...."

2. Counts IX and X—Sovereign immunity bars enforcement of the Act against Winnebago Tribe and the individual plaintiffs.

Plaintiffs argue that even if they are "distributors" as defined by the Act, defendants are powerless to enforce the Act against them due to tribal and official sovereign immunity. Plaintiff Winnebago Tribe maintains that Indian tribes retain sovereign immunity from suit absent either an explicit waiver of immunity or express authorization of the suit by Congress. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). This immunity extends to activities off the reservation. *See Kiowa Tribe of Oklahoma v. Manufacturing Techs., Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). *See also Aircraft Equip. Co. v. Kiowa Tribe of Oklahoma,* 975 P.2d 450 (Okla.1998) (holding that seizure of tribal property is barred by sovereign immunity after the Supreme Court's ruling in *Manufacturing Technologies* ).

The individual plaintiffs further argue that they are entitled to sovereign and official immunity because at all times they were tribal officials acting within the scope of their official duties. *See Fletcher v. United States,* 116 F.3d 1315, 1324 (10th Cir.1997) (noting that tribal sovereign immunity extends to tribal officials against claims for activities undertaken in their official capacity).

In response, defendants maintain that they have not taken any action against the Winnebago Tribe directly and therefore they have not infringed upon tribal sovereign immunity. Defendants also contend that the criminal actions taken against the individual plaintiffs are valid because the individual plaintiffs cannot commit a crime (tax evasion) and then claim sovereign immunity. Further, defendants argue that states may employ alternatives to bringing direct action against tribes in cases such as this by bringing an action under *Ex Parte Young,* 209 U.S. 123, 128, 28 S.Ct. 441, 52 L.Ed. 714 (1908), or collecting taxes on the product from the wholesalers by seizing the product or assessing the tax directly on the wholesaler. *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi In-*

*dian Tribe of Oklahoma,* 498 U.S. 505, 512, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991).

3. Counts II–IV—The defendants are federally preempted from enforcing fuel tax on the transactions between Winnebago Tribe and the Kansas Tribes.

a. Count II—To the extent defendants are imposing fuel taxes on Winnebago Tribe for its receipt of fuel on the Winnebago reservation, such taxes are *per se* invalid as a matter of law.

Count II alleges that if the legal incidence of the fuel tax falls on Winnebago Tribe acting through HCI, the tax is *per se* invalid as established in *Chickasaw. Sac and Fox,* 213 F.3d at 577 ("[If] the legal incidence of the tax falls on the Tribes for sales made on Indian lands, the fuel tax is unenforceable absent congressional consent . . . .").

b. Counts III and IV—The imposition of fuel taxes on transactions between and among Indian tribes is *per se* invalid as a matter of federal law or at least preempted by federal law under the balancing of interests analysis.

Plaintiffs first allege that the categorical bar against taxes that burden Indian tribes should be extended to taxes imposed on an Indian tribe's sale of goods to another Indian tribe if the product is manufactured by the selling tribe on the reservation. This is a matter of first impression in federal court. Crucial to plaintiffs' argument on this matter, is that the fuel is "manufactured" on the reservation. According to the papers filed with the court, there is great conflict among the parties as to whether the fuel is "manufactured" on the Winnebago reservation.

In the alternative, plaintiffs argue that if no categorical bar exists to prevent the taxation, under the balancing of interests test endorsed by the Supreme Court in *Chickasaw,* the federal and tribal interests against state taxation outweigh any legitimate interest Kansas has in imposing the taxes under the circumstances of this case. *See Chickasaw,* 515 U.S. at 459 ("[I]f the legal incidence of the tax rests on non-Indians, no categorical bar prevents enforcement of the tax; if the balance of federal, state, and tribal interests favors the State, and federal law is not to the contrary, the State may impose the levy."). Plaintiffs note that courts have generally struck down state taxation of products created on tribal lands. *See Indian Country, U.S.A., Inc. v. Oklahoma,* 829 F.2d 967 (10th Cir.1987). In this instance, plaintiffs argue that value is added to the fuel on the reservation via the manufacturing process. Thus, argue plaintiffs, the fuel is a product created on tribal lands and should not be taxed. In any event, it is not necessary for the court to decide which sovereigns' interests are more important before issuing a temporary restraining order or preliminary injunction as long as plaintiffs allege fair ground for litigation. *See Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1256 (10th Cir.2001).

Without directly addressing the merits of plaintiffs' arguments, the court finds plaintiffs have shown that the issues presented are so serious, substantial, difficult, and doubtful as to make them fair ground for litigation. *Zsamba,* 56 F.Supp.2d at 1210. Specifically, the court finds the issue of whether the state can tax fuel that is allegedly manufactured on tribal lands, thus adding value, and later sold to another tribe on the reservation raises a serious question for litigation.[3] Also, the court

---

**3.** The court notes that the parties' do not agree on whether the fuel was "manufactured" on the reservation. Defendants have

presented the court with substantial evidence that the fuel imported into Kansas from the

finds that whether the legal incidence of the tax falls on the Winnebago Tribe and whether the tax is assessed inside or outside Indian country is a serious question for litigation. Finally, whether the Hayden–Cartwright Act, 4 U.S.C. § 104, operates to cede taxing jurisdiction to the state on motor fuel is a question, not having been answered before, that is fair ground for litigation.

**IT IS THEREFORE BY THIS COURT ORDERED** that:

1) Plaintiffs' Motion for a Temporary Restraining Order (Doc. 4) is hereby granted. The defendants shall immediately cease enforcing any provision of the Kansas Motor Fuel Tax Act, Kansas Statutes Annotated, §§ 79–3401 *et seq.,* as to transactions between the Winnebago Tribe and HCI and Sac and Fox Nation of Missouri, Iowa Tribe of Kansas and Nebraska, and Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas. To this end, defendants shall be restrained from making any further seizures of plaintiffs' property pursuant to the Act.

2. Defendants shall take all necessary steps to stay the proceedings pending in state court against plaintiffs HCI, John Blackhawk, and Lance Morgan until such time as the court rules on plaintiffs' motion for preliminary injunction.

3. This restraining order shall be effective until such time as the court rules on plaintiffs' motion for preliminary injunction. This order shall not be construed as a preliminary injunction.

4. If the parties choose to submit additional briefing, they are required to do so no later than **June 3, 2002.** If additional briefing is submitted, the parties are ordered to address the applicability of the *Younger* abstention doctrine to this case.

5. A hearing is set for arguments and presentation of evidence on plaintiffs' motion for a preliminary injunction for **June 12, 2002 at 1:30 p.m.**

---

Winnebago Tribe contained very little alcohol. The Winnebago Tribe, however, has presented the court with affidavits alleging that it adds an alcohol additive to the fuel, which is considered a manufacturing process. The court finds that the issue of whether or not the Winnebago Tribe "manufactures" the fuel on their reservation is a question not properly decided at this stage of the litigation.