**SAC AND FOX NATION OF MISSOURI, Iowa Tribe of Kansas and Nebraska, Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas, Plaintiffs,**

v.

**John D. LaFAVER, Secretary Kansas Department of Revenue, Defendant.**

Civ. A. No. 95–4152–DES.

United States District Court, D. Kansas.

Oct. 5, 1995.

Order Denying Remedial Relief and Denying Modification of Order Oct. 27, 1995.

Stephen D. McGiffert, McDowell, Rice & Smith, P.C., Overland Park, KS, Mark S. Gunnison, McDowell, Rice & Smith, P.C., Kansas City, MO, George Forman, John R. Shordike, Patricia Prochaska, Berkeley, CA, Paul Alexander, Alexander & Karshmer, Washington, DC, for Sac and Fox Nation of Missouri.

Stephen D. McGiffert, McDowell, Rice & Smith, P.C., Overland Park, KS, Mark S. Gunnison, McDowell, Rice & Smith, P.C., Kansas City, MO, for Iowa Tribe of Kansas & Nebraska.

Lance W. Burr, Lawrence, KS, for The Kickapoo Tribe of Indians.

Lester N. Collier, Topeka, KS, John Michael Hale, Kansas Department of Revenue, Bureau of Legal Services, Topeka, KS, for John D. LaFaver.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of the plaintiffs for a temporary restraining order and a preliminary injunction (Doc. 3). This action was filed September 25, 1995. The court heard arguments from all parties at a hearing on October 4, 1995. At the conclusion of the hearing, the court took the matter under advisement.

Having further reviewed the pleadings and the arguments of counsel, the court is now prepared to rule on the motion for a temporary restraining order.

This case is brought by three federally recognized Indian Tribes: The Sac and Fox Nation of Missouri ("Sac and Fox"); the Iowa Tribe of Kansas and Nebraska ("Iowa"); and the Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas ("Kickapoo") (collectively the "Tribes"). The Sac and Fox Tribe is the beneficial owner of and exercises jurisdiction over the Sac and Fox Indian Reservation, as well as land located at Reserve, Kansas, which land is held in trust for the Sac and Fox by the United States of America. The Iowa Tribe is owner of and exercises jurisdiction over the Iowa Tribe of Kansas and Nebraska Indian Reservation. A part of the land is held in trust for the Iowa by the United States of America. The Kickapoo Tribe is the beneficial owner of and exercises jurisdiction over land within the Kickapoo Nation federally recognized boundaries, which land is held in trust for the Kickapoo by the United States of America.

In this action, the Tribes challenge the imposition of a motor fuel tax by the Kansas Department of Revenue ("Department") on the retail sales of gasoline/diesel fuel on Indian lands. The imposition of the tax is a result of amendments to the state of Kansas' fuel tax laws passed by the Kansas Legislature on May 7, 1995, and May 17, 1995.

The Kansas Department of Revenue delayed collection of the tax for two months. However, on September 6, 1995, the Department began collecting taxes on motor fuels sold by Indians on Indian lands. All three Tribes operate gas stations on their trust land.

The Tribes raise numerous reasons why the imposition of the tax is in violation of the law. These include: (1) the Act for the Admission of Kansas Into the Union, § 1 excludes Indian land from the territorial boundaries and civil jurisdiction of the state of Kansas; (2) the Tribes have not subsequently consented to the civil jurisdiction over their respective Indian lands of the Kansas State courts; (3) unless Congress instructs otherwise, a state's excise tax is unenforceable if its legal incidence falls on an Indian tribe or its members for sales made within Indian country; and (4) all three Tribes have entered into Tax Compacts with the Department and the Governor of the state of Kansas.

The revenue generated from the sale of motor fuel is a primary revenue source for the Tribes. The imposition of the tax would severely diminish the capacity of the Tribes to fund necessary services and programs to the members of the Tribes. There is also every likelihood that Tribal employees and administrative staff in the Tribes' business offices will be laid off as a result of the lost revenue. The loss of revenue, therefore, has potentially devastating effects for people who are already impoverished. Consequently, the Tribes seek a temporary restraining order to bar the collection taxes by the Department.

■■■ The issuance of a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court. *Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 354 (10th Cir. 1986). When the opposing party has been

notified and a hearing held prior to the issuance of a temporary restraining order, the specific requirements of Fed.R.Civ.P. 65(b), including the ten-day limitation on the duration of such an order, do not apply. *See* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951, at 500 (1973). In such a case the court, in addressing a motion seeking a temporary restraining order, follows the same procedure as for a preliminary injunction motion. *Id.* at 499.

■ To obtain a temporary restraining order or a preliminary injunction in federal court, the movant has the burden of establishing that:

(1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

*Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir.1992). If the moving party satisfies the first three elements, the standard for meeting the fourth requirement, likelihood of success on the merits, generally becomes more lenient. In such a case, the movant need only show that the issues are so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation. *See Franklin Savings Ass'n v. Office of Thrift Supervision*, 732 F.Supp. 1123, 1124–25 (D.Kan.1990).

■ 1. *Irreparable Injury.* The Tribes contend that they will be irreparably harmed if the tax collection continues because the loss of revenue will result in decreased services and programs to tribal members and the loss of employment for specific Tribal members. The Tribes further contend that such devastating losses of revenue may well mean the complete elimination of social service, medical and education payments to tribal members. Even such basic services as law enforcement and fire protection may be endangered by this loss of revenue. Furthermore, the Tribes argue that if the Department is not enjoined from collecting the taxes and the Tribes win on the merits, the loss

of revenue in the interim may so devastate the Tribes that the ability to sustain themselves may be irretrievably lost.

■ Under normal circumstances, monetary loss may be remedied by an award of compensatory damages, and the risk of such loss is therefore not considered irreparable. *See Holly Sugar Corp. v. Goshen County Coop. Beet Growers Ass'n*, 725 F.2d 564, 570 (10th Cir.1984). Here, however, the court considers the consequences of such losses as extremely serious and potentially devastating to the Tribes. Such loss would indeed meet the irreparable harm test.

■ 2. *Harm to Opposing Party.* At the hearing on this matter, and in their memorandum in support, the Tribes contend that the Department will suffer little if the restraining order issues. For years the state of Kansas made no attempt to impose fuel taxes on tribal retail sales on Indian lands and had even admitted that it had no authority to do so. The Tribes further assert that the collection of taxes, which began less than a month ago, has not resulted in a reliance on the revenue by the state.

The court also notes that the Department made no statement concerning any negative impact the loss of tax collection would have on the state's budget. In fact, in its argument, the Department alluded to the very minor role the Tribes' tax dollars would play in the state's funding scheme.

The court concludes the damage caused to the opposing party is negligible.

■ 3. *The Public Interest.* The requested restraining order will not impair the public interest in the collection of revenue for the state as the Department has acknowledged that the contribution from the Tribes is minimal in the total scheme of collection from all distributors and retailers. The Department raised no public interest issue as it relates the collection of the taxes from these plaintiffs and the court finds none.

On the other hand, the public interest in assuring the continued presence of social service, public safety and education programs and benefits to the Tribes on Indian lands is significant. The public also has a genuine

interest in helping to assure Tribal self-government, self-sufficiency and self-determination. Should the collection of the tax continue and the previously stated negative impact on the Tribes occur, the public interest will be ill-served by the potential influx of Tribal members into the state's social service and welfare programs.

The court's issuance of the requested order would not be adverse to the public interest.

■ **4. *Likelihood of Prevailing on the Merits.*** Having established the first three prerequisites for temporary injunctive relief, the plaintiffs need only show that the issues presented are so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation. *See Tri–State Generation*, 805 F.2d at 358; *Franklin Savings Ass'n*, 732 F.Supp. at 1124–25. The court concludes the Tribes have met this burden.

The Tribes have presented arguments which call for analysis of new legislation which substantially changes the course of business between the state of Kansas and the Tribes as it relates to the assessment and taxation of motor fuels sold on Indian lands. They have also placed before the court apparently properly negotiated and signed Tax Compacts between the state of Kansas and the Tribes which, heretofore, the state has honored. Whether the state of Kansas has jurisdiction to tax fuel sold on Indian lands is also questioned under the Kansas Act for Admission and the current law of the United States Supreme Court in *Oklahoma Tax Commission v. Chickasaw Nation*, —— U.S. ——, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995).

Consequently, on the basis of the information presently available, the court, having considered all of the arguments, concludes that the Tribes have presented issues "so substantial, serious, difficult and doubtful as to make them fair game for litigation." *Tri–State Generation*, 805 F.2d at 358.

Because the Tribes at this early stage of the proceedings have satisfied the four requirements for obtaining temporary injunctive relief, the court determines that a temporary restraining order is warranted to preserve the status which existed prior to Sep-

tember 6, 1995, until such time as the court considers, on the basis of evidence to be submitted by all parties, the Tribes' motion for a preliminary injunction.

## *TEMPORARY RESTRAINING ORDER*

**IT IS THEREFORE BY THE COURT ORDERED** that the defendant Kansas Department of Revenue is enjoined and restrained from applying and enforcing the collection of any motor fuel tax on tribal retail motor fuel sales on Indian lands, including sales from distributors to the Tribes, as outlined in Senate Bill No. 88 signed on May 7, 1995, and House Bill No. 2161 signed on May 17, 1995, and implemented on September 6, 1995.

**IT IS FURTHER ORDERED** that this temporary restraining order shall be effective until such time as the court has ruled on the plaintiff's motion for preliminary injunction, following a hearing at which all parties shall have the opportunity to present evidence and further argument to this court.

**IT IS FURTHER ORDERED** that in the exercise of its discretion, the court has considered the issue and determined that a bond, pursuant to Fed.R.Civ.P. 65(c), is unnecessary because "there is an absence of proof showing a likelihood of harm." *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461 (10th Cir.1987).

**IT IS FURTHER ORDERED** that this matter shall be set for hearing on the plaintiffs' motion for preliminary injunction on **Wednesday, November 8, 1995, at 9:30 a.m.** in courtroom 403, United States District Court for the District of Kansas, Topeka, Kansas.

## *ORDER ON MOTIONS*

This matter is before the court on plaintiffs' Sac and Fox Nation of Missouri, Iowa Tribe of Kansas and Nebraska, and Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas, the ("Tribes"), Motion for Issuance of Contempt Citation and Other Remedial Relief (Doc. 19) and defendant's Motion for Modification or Clarification of Temporary Restraining Order (Doc. 21). The Tribes claim that defendant John D. LaFav-

er, Secretary, Kansas Department of Revenue (Department), is in violation of this court's Memorandum and Order filed October 5, 1995.

 The court's order language stated in pertinent part:

> ... that the defendant Kansas Department of Revenue is enjoined and restrained from applying and enforcing the collection of any motor fuel tax on tribal retail motor fuel sales on Indian lands, including sales from distributors to the Tribes, as outlined in Senate Bill No. 88 signed on May 7, 1995, and House Bill No. 2161 signed on May 17, 1995, and implemented on September 6, 1995.

The court further ordered:

> ... that this temporary restraining order shall be effective until such time as the court has ruled on the plaintiffs' motion for preliminary injunction, following a hearing at which all parties shall have the opportunity to present evidence and further argument to the court.

The court fails to see how this clear and unambiguous language can be misunderstood. However, in an attempt to further illumine the order of this court, let it be clear that the Department is enjoined and restrained from applying or enforcing collection of any motor fuel tax on tribal fuel sales on Indian lands, *including sales from distributors* as outlined in Senate Bill No. 88 signed May 7, 1995, and House Bill No. 2161 signed on May 17, 1995 and implemented on September 6, 1995. The court's order prohibits the collection of any tax under Bill No. 88 or Bill No. 2161. This order extends from the date of implementation, September 6, 1995, until such time as the court has ruled on the Tribes' motion for preliminary injunction.

Should the Department attempt, in any way, to apply, enforce, implement, or otherwise put into effect Senate Bill No. 88 or House Bill No. 2161, the court will have no choice but to find the defendant in contempt of this court's order.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiffs' Motion for Issuance of Contempt Citation and Other Remedial Relief (Doc. 19) is, at this time, denied subject to reconsideration.

**IT IS FURTHER ORDERED** that defendant's Motion for Modification or Clarification of Temporary Restraining Order (Doc. 21) has been considered and is denied as moot.

Dated this 27 day of October, 1995, at Topeka, Kansas.