**WINNEBAGO TRIBE OF NEBRASKA;** Sac and Fox Nation of Missouri in Kansas and Nebraska; Iowa Tribe of Kansas and Nebraska; Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas; HCI Distribution; John Blackhawk, Chairman of the Winnebago Tribe of Nebraska; Lance Morgan; Erin Morgan; and Earlene Hradec, Plaintiffs,

v.

Carla J. STOVALL, Attorney General for the State of Kansas; Stephen S. Richards, Secretary of the Kansas Department of Revenue; Steven Maxwell, Assistant Attorney General for the State of Kansas; Jeffrey Lochow, Director of Tax Operations; Jeffrey D. Scott, Designee of the Director of Taxation, Kansas Director of Revenue, Defendants.

No. 02–4070–JTM.

United States District Court, D. Kansas.

Aug. 2, 2002.

Evelyn Z. Wilson, Thomas E. Wright, Kevin James Grauberger, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KA, Vernle C. Durocher, Jr., Mary Johanna Streitz, Dorsey & Whitney, Minneapolis, MN, Charley L. Laman, Topeka, KS, Thomas Weathers, Alexander & Karshmer, Berkeley, CA, Mark S. Gunnison, Payne & Jones, Chtd., Overland Park, KS, for Plaintiffs.

Brian R. Johnson, Office of Attorney General, John Michael Hale, Kansas Department of Revenue Bureau of Legal Services, Joseph Brian Cox, Jay Douglas Befort, Kansas Department of Revenue, Topeka, KS, for Defendants.

### *MEMORANDUM AND ORDER*

MARTEN, District Judge.

This matter is before the court on Plaintiffs' Motion for a Preliminary Injunction (Doc. 18). Defendants have filed a Response (Doc. 49). Additionally, on July 8, 2002, the court heard oral arguments on plaintiffs' motion. The court has carefully reviewed the parties' written and oral arguments and is now prepared to rule.

## I. BACKGROUND [1]

This litigation arose from defendants attempt to enforce the Kansas Motor Vehicle Fuel Tax Act, Kansas Statutes Annotated §§ 79–3401 *et seq.* ("Act"), upon plaintiffs. The Act imposes a tax, subject to various exceptions, on the use or the sale and delivery of motor vehicle fuel within the state. Pursuant to Kansas Statutes Annotated § 79–3408(c) of the Act, the legal incidence of the fuel tax falls on the "distributor of first receipt" of such fuel. *See*

---

1. The background information is taken largely from Judge Saffels' May 17, 2002, temporary restraining order ("TRO"). *Winnebago Tribe* *v. Stovall,* 205 F.Supp.2d 1217 (D.Kan.2002) (published opinion).

*Sac & Fox Nation of Missouri v. Pierce,* 213 F.3d 566, 578 (10th Cir.2000) (holding that the legal incidence of the Kansas Fuel Tax falls on distributors, not retailers). The distributor must compute and remit the tax each month for the fuel received by the distributor in the state of Kansas. Kan. Stat. Ann. § 79–3410

Plaintiff HCI is a corporation organized under the laws of the Winnebago Tribe. HCI is wholly-owned and operated by Ho–Chuck, Inc., which in turn is wholly-owned by the Winnebago Tribe. The Winnebago Tribe, through HCI, manufactures motor fuels on its reservation, and subsequently sells the fuel to other Indian tribes for retail sales.[2]

To begin the manufacturing process, the Winnebago Tribe purchases fuel from off-reservation pipeline stations in Nebraska and Iowa. The fuel is then transported to the Tribe's storage and blending facilities, which are located on the Winnebago Tribe's reservation near Emerson, Nebraska. Once the fuel is on the reservation, HCI blends an alcohol additive into the gasoline. This blending process renders a fuel product with a higher octane rating. As an alternative to the alcohol additive, HCI also uses a soy product as an additive. (Morgan Aff. in Supp. of Pls.' Mot. for Prelim. Inj. ¶ 3).

On May 8, 2001, HCI applied for a Motor Vehicle Fuel and Special Fuel Importer/Exporter License ("Importer/Exporter License") and a Motor Vehicle and Special Fuel Distributor's License ("Distributor License") through the Kansas Department of Revenue ("KDOR"). KDOR returned HCI's application for the Distributor License and informed HCI that the only license HCI needed was an Importer/Exporter License. KDOR issued HCI an Importer/Exporter License, effective May 4, 2001.

Plaintiffs Sac and Fox Nation of Missouri, Iowa Tribe of Kansas and Nebraska, and Kickapoo Tribe of Indians of the Kickapoo Reservation ("Kansas Tribes"), entered into contracts with the Winnebago Tribe through HCI for the purchase of fuel manufactured by HCI in August of 2001. According to the Winnebago Tribe, the fuel was sold to the Kansas Tribes on the Winnebago reservation. The fuel was then transported by a fuel tanker from the blending facility on the Winnebago reservation to the fuel depots located on the reservations of the various Kansas Tribes.

On September 10, 2001, shortly after Winnebago Tribe began selling fuel to the Kansas Tribes, HCI received a letter from KDOR stating that HCI, as a licensed importer under the Act, was required to report and remit Kansas fuel taxes on deliveries of fuel to any retailer in the state of Kansas. HCI responded to KDOR's letter stating that HCI is a wholly-owned, tribally-chartered corporation that enjoys all the privileges and immunities of the Winnebago Tribe, and, consequently, Kansas lacks the authority to tax the sale of the fuel. On October 17, 2001, KDOR made a second demand to HCI for payment of the tax.

On April 8, 2002, KDOR working in conjunction with the Kansas Attorney General's office, submitted an affidavit and application for seizure of HCI's property. On the following day, April 9, 2002, defendants seized the following property without advance notice: two trucks, two tanker

---

**2.** The court recognizes that whether the fuel in question is "manufactured," as alleged by plaintiffs, is an issue that will certainly be the subject of further litigation. For purposes of issuing the preliminary injunction, however, the court finds plaintiffs have presented sufficient evidence indicating the fuel undergoes a manufacturing process. *See* (Morgan Aff. in Supp. of Pls.' Mot. for T.R.O. ¶ 3; Morgan Aff. in Supp. of Pls.' Mot. for Prelim. Inj. ¶¶ 3–7).

trailers, fuel and fuel oil, two black permit books and shipping papers. Simultaneously, KDOR entered orders for a jeopardy assessment and issued tax warrants against HCI and the individual plaintiffs. The Attorney General also initiated criminal proceedings against plaintiffs HCI, Chairman Blackhawk, and Lance Morgan. Finally, the Attorney General's office proceeded with a criminal action against James Knox, a HCI employee who was driving a fuel tanker when it was seized. Mr. Knox is being prosecuted for unlawful delivery of fuel without a permit in violation of Kansas Statutes Annotated §§ 79–3464e and 55–507.

## II. PROCEDURAL BACKGROUND

Plaintiffs have initiated this action against defendants, seeking injunctive and declaratory relief. The case was initially assigned to Senior Judge Dale E. Saffels but has since been transferred to the undersigned. On May 8, 2002, plaintiffs filed a motion for a TRO. Plaintiffs' motion asked Judge Saffels to temporarily restrain defendants from enforcing the Act as to transactions between the various plaintiffs, order defendants to stay the criminal and administrative proceedings against the individual plaintiffs and HCI, and require defendants return the seized property to the respective plaintiffs.

On May 17, 2002, Judge Saffels entered a temporary restraining order, ordering defendants to cease enforcement of any provision of the Act as it applies to transactions between plaintiffs. In addition, Judge Saffels restrained defendants from making any further seizures of plaintiffs' property. Judge Saffels did not, however, order defendants to return the property that had already been seized. In compliance with Judge Saffels' order, defendants filed a motion to stay criminal proceedings against the individually named plaintiffs and HCI.

After issuance of the TRO, plaintiff filed a motion for clarification. Plaintiffs requested Judge Saffels to clarify his order and require defendants to return the seized property and stay the criminal proceedings against Mr. Knox.

Judge Saffels denied plaintiffs' request as to the seized property and granted plaintiffs' request as to the proceedings against Mr. Knox. Judge Saffels found the broad language in the TRO necessarily required defendants to stay criminal proceedings as against HCI employees and/or agents who allegedly committed crimes while carrying out transactions between HCI and the other plaintiffs. Judge Saffels noted that proceeding with the criminal prosecution of a HCI employee for acts committed in the scope of carrying out the sales transactions between plaintiffs, constitutes enforcement of the Act as applied to transactions between plaintiffs. In denying plaintiffs' request for an order requiring defendants to return the seized property, Judge Saffels' court found the issue was better reserved for the impending decision on plaintiffs' motion for a preliminary injunction. After issuance of the order clarifying the TRO, this case was transferred.

On July 8, 2002, a hearing was held on plaintiffs' motion for a preliminary injunction. The court granted plaintiffs' motion from the bench, indicating that a written order would follow.[3]

---

**3.** Defendants have also filed a motion to dismiss from which they relied heavily upon in oral arguments and attempted to incorporate into their response to plaintiffs' motion for preliminary injunction. Because plaintiffs have not had the opportunity to respond to the motion to dismiss, this order will not address, in any meaningful way, arguments contained therein.

## III. STANDARD FOR ISSUANCE OF A PRELIMINARY INJUNCTION

Whether or not to grant preliminary injunctive relief is within the sound discretion of the district court. *Tri—State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 354 (10th Cir.1986). To obtain a preliminary injunction in federal court, the movant has the burden of establishing that: (1) the party will suffer irreparable injury unless the motion is granted; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits. *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1171 (10th Cir.1998).

If the moving party satisfies the first three elements, the standard for meeting the fourth requirement, likelihood of success on the merits, generally becomes more lenient and the movant "need only show that the issues are so serious, substantial, difficult, and doubtful as to make them fair ground for litigation." *Zsamba ex rel. Zsamba v. Community Bank*, 56 F.Supp.2d 1207, 1210 (D.Kan.1999) (quoting *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir.1992)). In some instances, however, the standard for issuance of preliminary injunctive relief is heightened.

Defendants have maintained that the court should employ a heightened standard in determining whether a preliminary injunction should be granted because, according to defendants, issuance of the injunction would alter the "status quo." If indeed the injunction would alter the status quo, plaintiffs must show that on balance, the traditional four factors weigh "heavily and compellingly" in favor of

granting the injunction. *See SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir.1991). In issuing the TRO, Judge Saffels rejected defendants' arguments in this regard. Defendants have not since made arguments compelling the court to deviate from Judge Saffels' position.

At the TRO phase, it was noted that the term "status quo" is not defined by the parties' existing legal rights. Instead, status quo is "defined by the *reality* of the existing relationship between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *SCFC ILC*, 936 F.2d at 1100 (emphasis in original) (alternatively defining status quo as the "last uncontested status between the parties which preceded the controversy ...."). *See also Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir.2001).

In accordance with the above standard, the court's intention in issuing a preliminary injunction is to return the parties to their respective positions prior to the time enforcement actions were taken by defendants. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir.2001) ("The preliminary injunction issued by the district court in essence 'froze' that moment in time, giving (temporary) validity to the tribal registrations and titles already issued ....").

## IV. DISCUSSION

As a preliminary matter, the court notes that pursuant to the Federal Rules of Civil Procedure, the court is required to make detailed findings when issuing a preliminary injunction. *See* Fed.R.Civ.P. 52(a) (requiring the district court to make findings of fact and conclusions of law at the

time it enters a preliminary injunction). *See also Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1245 (10th Cir.2001). Because the court is in general agreement with the position taken by Judge Saffels in the TRO, much of the discussion below will be a repetition of Judge Saffels' findings.

## A. Irreparable Injury

■ A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because damages would be inadequate or difficult to ascertain. *Tri–State Generation & Transmission Ass'n, Inc., v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1354 (10th Cir.1989). In this case, each plaintiff argues they have and will suffer injury that cannot be adequately remedied at law.

Winnebago Tribe and HCI argue that they have suffered irreparable injury for several reasons. First, it is argued that the seizure of HCI's trucks, tankers, and fuel, has rendered the Winnebago Tribe unable to conduct business. According to Winnebago Tribe's briefing, the seizure of their property has resulted in loss of revenues and profits, which are used for services for the Winnebago tribal members including police service, fire service, health care service and educational services. Winnebago Tribe additionally argues that as a result of defendants' actions, its primary supplier of alcohol-the key ingredient to the manufacturing process-has refused to sell to the HCI. Further, Winnebago Tribe's access to credit has apparently been almost destroyed due to defendants' actions.[4] Finally, Winnebago Tribe argues

that mere seizure of tribal assets is sufficient to demonstrate irreparable injury. *See Hoover,* 150 F.3d at 1171.

The Kansas Tribes argue that the defendants' actions have left them without a supplier of motor vehicle fuel, resulting in lost sales and profits. Without such revenues, the tribes argue, they will be unable to fund tribal government programs and government services for tribal members. The Kansas Tribes further argue that defendants' actions have interfered with their inherent right to trade with other Indian nations free from state interference and taxation.

Plaintiffs Blackhawk and Lance Morgan face criminal prosecution as well as seizure of their personal property by defendants. Plaintiffs Erin Morgan and Earlene Hradec both face seizure of their personal property. These plaintiffs argue that such seizure of their personal property and criminal prosecution are clearly sufficient to satisfy the irreparable injury element.

Defendants argue that plaintiffs' claim of irreparable harm is without merit because the claim is centered around economic harm. Defendants contend that the Tenth Circuit in, *Sac and Fox Nation v. Pierce,* 213 F.3d 566 (10th Cir.2000), squarely rejected economic harm as a basis for irreparable injury. Defendants, however, have misapplied the *Sac & Fox* decision.

In *Sac & Fox,* the Tenth Circuit's discussion of tribal lost profits was in the context of whether the tribe's interest in profits was sufficient to overcome the state's interest in taxation. This balancing of interests went to the merits of the tribe's claims, not to whether they would

---

4. Affidavits attached to plaintiffs' pleadings indicate that two of HCI's banks have halted all future lending activities due to the seizure of HCI's property. Additionally, Dun & Bradstreet Information Services has downgraded HCI and Ho–Chuck's rating from "good" to "non-rating." This "non-rating" status has apparently resulted in cancellation of business account credit cards. (Morgan Supplemental Aff. at 2–3).

have suffered irreparable injury had the injunction not been issued. *Sac & Fox,* 213 F.3d at 584–85 ("[T]he Supreme Court has never 'gone so far as to grant tribal enterprises selling goods to nonmembers an artificial competitive advantage over all other businesses.' ") (quoting *Colville,* 447 U.S. at 155, 100 S.Ct. 2069). While the Tenth Circuit's decision in *Sac & Fox,* may be relevant in the court's inquiry as to the merits of plaintiffs' claims, it is not instrumental in deciding whether or not plaintiffs will suffer irreparable harm if an injunction is not issued.

■ The court finds that plaintiffs have demonstrated that they will suffer irreparable injury in that monetary damages will not be sufficient to undo the damage with which plaintiffs are currently faced. As noted by the court at the July 8, 2002, hearing, this is not a matter of how much capital will be lost if the injunction is not imposed. Instead, the issues concern the scope of tribal sovereignty, an issue that can not be measured in dollars.

### B. Harm to Opposing Party

Plaintiffs argue that if the preliminary injunction is issued, the harm faced by the defendants is negligible compared to the harm caused to plaintiffs if the preliminary injunction is not issued. If the preliminary injunction is not issued, plaintiffs argue they will suffer a loss of revenue; additional loss of jobs at the HCI processing plant; loss of essential government functions and services; loss of reputation, business relationships, creditworthiness, and goodwill; and criminal charges and seizure of personal property as to the individual plaintiffs. Plaintiffs argue that in contrast to the vast losses they are confronted with, defendants will only lose one third of one percent of the total amount of revenue produced by the fuel tax. Defendants argue that they will lose revenue,

but more importantly, the state of Kansas' sovereign right to enforce its civil and criminal laws is at stake.

■ Once again, this is not a matter of plaintiffs' finances versus defendants' finances. The harm to the parties must be measured in terms of the plaintiffs' ability to carry on essential tribal services versus the defendants' ability carry out their responsibilities uninterrupted. The court finds that in this capacity, issuance of the injunction will not affect the defendants in any appreciable way in that they will be able to continue to carry out their responsibilities. If, however, the injunction is not issued, the impact on the tribes could be tremendous. The court agrees that a final order granting the relief requested could very well adversely affect the state of Kansas' sovereignty, but in terms of the standard for issuing a preliminary injunction, plaintiffs are faced with more devastating losses than the state's temporary inability to enforce its fuel tax law.

The court finds that plaintiffs have demonstrated the harm suffered by defendants, if an injunction is issued, is negligible compared to the harm faced by plaintiffs if the injunction is not issued.

### C. Public Interest

In urging the court to find issuance of the preliminary injunction is not against the public interest, plaintiffs note that the public has a strong interest in assuring the continued presence of social services, public safety and educational programs that benefit tribal members. *Sac & Fox Nation of Missouri v. LaFaver,* 905 F.Supp. 904, 907–08 (D.Kan.1995). Plaintiffs also note that the public has a significant interest in assuring the viability of tribal self-government, self-sufficiency, and self-determination. *Id.* If the defendants are allowed to continue their current actions against plaintiffs, it is argued that services

could be lost and that the viability of tribal self-government, self-sufficiency, and self-determination are in jeopardy.

Defendants suggest that plaintiffs' arguments on this issue are a re-packaging of the economic harm arguments rejected by the Tenth Circuit in *Sac & Fox*, 213 F.3d at 566. Defendants also maintain that the public interest in assuring that criminal and civil laws of the state are enforced trumps any purported public interest in tribal self-sufficiency, self-determination or self-government.

■ The court once again rejects defendants' opposition to plaintiffs' economic harm argument. This case is not only about economics, it is about sovereignty, state and tribal sovereignty. The court further finds that while the public has an interest in seeing that civil and criminal laws are enforced, a preliminary injunction as to the prosecutions of the individual defendants does not permanently impose on the state's ability to prosecute. Instead, the state is only being required to stay the proceedings until these very important sovereignty issues can be adjudicated. Thus, the court finds that issuing the preliminary injunction in this case would not be contrary to public interest.

### D. Likelihood of Success on the Merits

Because plaintiffs have established the first three requirements for issuance of a preliminary injunction, plaintiffs need only show that the issues presented are so serious, substantial, difficult, and doubtful as to make them fair ground for litigation.

*Zsamba*, 56 F.Supp.2d at 1210 (citing *Resolution Trust*, 972 F.2d at 1199).

Although plaintiffs' complaint contains nineteen counts, plaintiffs focus on Count I, Counts IX–X, and Counts II–IV, as those counts which are likely to succeed on the merits. Plaintiffs' arguments as to each of these counts will be discussed in turn.

1. **Count I—The legal incidence of the tax falls on the Kansas Tribes and therefore the tax is *per se* invalid as a matter of law.**

The fuel tax provided for in the Act falls upon the "distributor of first receipt." Kan. Stat. Ann § 79–3408(c). *See also Sac & Fox*, 213 F.3d at 578–79 (holding that the legal incidence of the Kansas fuel tax falls on the distributor). In *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 453, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995), the Supreme Court held that if the legal incidence of a state tax falls upon a tribe or tribal members for sales made within Indian country, the imposition of the tax is categorically barred as a matter of federal law. Under *Chickasaw*, plaintiffs argue that the Kansas fuel tax is *per se* invalid, as applied to plaintiffs, because the legal incidence of the tax must fall on the Kansas Tribes for sales made on reservation land.

In reaching this conclusion, plaintiffs argue that pursuant to the Act, HCI is not subject to the tax, and, therefore, the tax must fall on the Kansas Tribes. Central to plaintiffs' argument is the contention that HCI is not a distributor as defined by the Act.[5] HCI argues that it is not a

---

5. A distributor, as defined by the act means any person, who:

(1) Imports or causes to be imported from any other state or territory of the United States motor-vehicle fuels or special fuels for such person's own use in the state

of Kansas, or for sale and delivery therein, after the same shall have come to rest or storage therein, whether or not in the original package, receptacle or container; or

(2) imports or causes to be imported, for a foreign country, motor-vehicle fuels or

distributor as the term is defined in § 79–3401(f) of the Act because HCI sells and delivers fuel to the Kansas Tribes *before* it comes to rest or storage within Kansas. HCI further bolsters this argument by drawing the court's attention to the fact that KDOR refused to issue a distributors license to HCI, but, instead, KDOR issued HCI an importer's license. HCI further contends that even if it is a distributor, it certainly does not "receive" fuel in Kansas as required for imposition of the fuel tax.[6] If HCI is not a distributor of first receipt, argues plaintiffs, then the Kansas Tribes are the distributors of first receipt and the tax is therefore *per se* invalid in accordance with *Chickasaw.*

Defendants argue that based on the plain language of the Act, HCI is a distributor and, therefore, it must remit fuel tax to the state of Kansas. Defendants maintain that HCI is a distributor as defined by § 79–3401(f)(1) of the Act because the definition of distributor incorporates the definition of importer and HCI is clearly an importer.[7] Importer is defined as a person who "imports or causes to be imported from any other state ... motor vehicle

fuels ... for sale and delivery therein ...." Finally, Kansas Statutes Annotated § 79–3410 requires that "[e]very distributor, manufacturer or *importer* ... shall pay to the director at the director's office the amount of taxes due to the state on all motor-vehicle fuels or special fuels received by such distributor, manufacturer or importer during the preceding calendar month." (emphasis added).

**2. Counts IX and X—Sovereign immunity bars enforcement of the Act against Winnebago Tribe and the individual plaintiffs.**

Plaintiffs argue that even if HCI is a "distributor of first receipt" as defined by the Act, defendants are powerless to enforce the Act against them due to tribal and official sovereign immunity. Plaintiff Winnebago Tribe maintains that Indian tribes retain sovereign immunity from suit absent either an explicit waiver of immunity or express authorization of the suit by Congress. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56

---

**6.** Pursuant to the Act, "received" means:

special fuels for such person's own use in the state of Kansas, or for sale and delivery therein, after the same shall have come to rest or storage, whether or not in the original package, receptacle or container;

(3) purchases or receives motor-vehicle fuels or special fuels in the original package, receptacle or container in the state of Kansas for such person's own use therein, or for sale and delivery therein, from any person who has imported the same from any other state or territory of the United States, or any other nation, in case such motor-vehicle fuels or special have not, prior to such purchase or receipt, come to rest or storage in the state of Kansas; or

(4) received and, in any manner, uses, sells, or delivers motor-vehicle fuels or special fuels in the state of Kansas on which the tax provided for in this act has not previously been paid;

Kan. Stat. Ann. § 79–3401(f).

motor-vehicle fuel or special fuel produced, refined, prepared, distilled, manufactured, blended or compounded at any refinery or other place, in the state of Kansas by any person, or imported into this state from any other state, territory, or foreign country by pipeline or connecting pipeline at a pipeline terminal or pipeline tank farm for storage, shall be deemed to be "received" by such person thereat when the same shall have been loaded at such refinery, pipeline terminal, pipeline tank farm or other place, into tank cars, tank trucks or other container, or placed in any tank from which any withdrawals are made direct into tank cars, tank trucks or other types of transportation equipment, containers or facilities.

Kan. Stat. Ann. 79–3401(p).

**7.** *See supra* note 5.

L.Ed.2d .106 (1978).[8] This immunity extends to activities off the reservation. *See Kiowa Tribe of Oklahoma v. Manufacturing Techs., Inc.*, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). *See also Aircraft Equip. Co. v. Kiowa Tribe of Oklahoma*, 975 P.2d 450 (Okla.1998) (holding that seizure of tribal property is barred by sovereign immunity after the Supreme Court's ruling in *Manufacturing Technologies* ). The individual plaintiffs further argue that they are entitled to sovereign and official immunity because at all times they were tribal officials acting within the scope of their official duties. *See Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir.1997) (noting that tribal sovereign immunity extends to tribal officials against claims for activities undertaken in their official capacity).

In response, defendants maintain that plaintiffs do not have a likelihood of success on the merits as to this issue because defendants have not taken any action directly against the Winnebago Tribe and therefore they have not infringed upon tribal sovereign immunity.[9] Defendants also contend that criminal actions taken against the individual plaintiffs are valid because the individual plaintiffs cannot commit a crime (tax evasion) and then claim sovereign immunity. Further, defendants argue that states may employ alternatives to bringing direct action against tribes in cases such as this by bringing an action under *Ex Parte Young*, 209 U.S. 123, 128, 28 S.Ct. 441, 52 L.Ed. 714 (1908),[10] or collecting taxes on the product from the wholesalers by seizing the product or assessing the tax directly on the wholesaler. *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 512, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991).

### 3. Counts II–IV—The defendants are federally preempted from enforcing fuel tax on the transactions between Winnebago Tribe and the Kansas Tribes.

### a. Count II—To the extent defendants are imposing fuel taxes on Winnebago Tribe for its receipt of fuel on the Winnebago reservation, such taxes are *per se* invalid as a matter of law.

Count II alleges that if the legal incidence of the fuel tax falls on Winnebago

---

**8.** At the hearing on plaintiffs' motion for preliminary injunction, defendants argued that plaintiffs have waived their sovereign immunity. As to the individual plaintiffs, the defendants contended that by agreeing to appear in state court on a summons, they waived their immunity. Defendants additionally argued that sovereign immunity was waived when HCI signed an application for motor vehicle fuel and special importer/exporter license. The court was not persuaded by defendants' arguments in this regard at the July 8, 2002, hearing, but these issues will be further evaluated at a later date as these were issues raised in defendants' motion to dismiss.

**9.** Defendants have argued that because HCI is a subsidiary of a wholly owned tribal corporation it is somehow too far down the line to be entitled to tribal sovereign immunity. The court rejects this contention and finds there is no support for defendants position. *See Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 157 n. 13, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) ("[T]he question of tax immunity cannot be made to turn on the particular form in which the Tribe chooses to conduct its business."); *Barker v. Menominee Nation Casino*, 897 F.Supp. 389, 393 (E.D.Wis.1995) (holding that an action against a tribal enterprise is an action against the tribe itself).

**10.** Plaintiffs assert that *Ex Parte Young* actions are only plausible when a suit seeks to require a state official to comply with federal law, not state law. *See ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1188 (10th Cir.1998).

Tribe acting through HCI, the tax is *per se* invalid as established in *Chickasaw*, 515 U.S. at 453, 115 S.Ct. 2214; *Sac & Fox*, 213 F.3d at 577 ("[If] the legal incidence of the tax falls on the Tribes for sales made on Indian lands, the fuel tax is unenforceable absent congressional consent ....").

Defendants vigorously dispute plaintiffs' assertion that the transactions between the Kansas Tribes and the Winnebago Tribe occur on the Winnebago reservation. Defendants contend that the title to the fuel does not transfer to the Kansas Tribes until after the fuel leaves the Winnebago reservation. To that end, defendants provided the court with documentation indicating that HCI only has a private carrier license, allowing HCI to haul only its own fuel.

**b. Counts III and IV—The imposition of fuel taxes on transactions between and among Indian tribes is *per se* invalid as a matter of federal law or at least preempted by federal law under the balancing of interests analysis.**

Plaintiffs first allege that the categorical bar against taxes that burden Indian tribes should be extended to taxes imposed on an Indian tribe's sale of goods to another Indian tribe if the product is manufactured by the selling tribe on the reservation. This is a matter of first impression in federal court.

In the alternative, plaintiffs argue that if no categorical bar exists to prevent the taxation, under the balancing of interests test endorsed by the Supreme Court in *Chickasaw*, the federal and tribal interests against state taxation outweigh any legitimate interest Kansas has in imposing the taxes under the circumstances of this case. *See Chickasaw*, 515 U.S. at 459, 115 S.Ct. 2214 ("[I]f the legal incidence of the tax rests on non-Indians, no categorical bar prevents enforcement of the tax; if the balance of federal, state, and tribal interests favors the state, and federal law is not to the contrary, the state may impose the levy."). The court employs a balancing of interests tests when a state asserts authority over the conduct of non-Indians engaging in activity on the reservation.[11] *See Indian Country, U.S.A., Inc. v. Oklahoma*, 829 F.2d 967, 985 (10th Cir.1987). The balancing of interests test requires a "particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." *Id.*

Plaintiffs note that courts have generally struck down state taxation of products created on tribal lands. *See Indian Country, U.S.A.*, 829 F.2d at 986 (10th Cir.1987) (finding that because the product [bingo] was "created, sold, and consumed" within the boundaries of tribal lands, the tribe had a substantial interest in the enterprise outweighing the state's interest in taxation). In this instance, plaintiffs assert value is added to the fuel on the reservation via the manufacturing process. Thus, argue plaintiffs, the fuel is a product created on tribal lands, sold on tribal lands, and, therefore, should not be subject to state taxation.

Defendants, on the other hand, contend that HCI did not add alcohol to the gasoline before it left the Winnebago reserva-

---

**11.** The parties disagree as to whether or not the transactions between the plaintiffs occur on or off reservation.

tion; thus, there was no "value added." To support its position, defendants have provided significant documentation indicating the fuel seized by defendants contained very little alcohol. Plaintiffs, however, contend defendants did not test the diesel fuel compartments of the seized trucks and that the fuel seized by defendants was mixed with the soy-based additive (rather than an alcohol-based additive), which is undetectable by the tests run on the fuel.

■ While the very important issues raised during the course of this litigation thus far cannot be decided today, the court finds plaintiffs have shown that the issues presented are so serious, substantial, difficult, and doubtful as to make them fair ground for litigation. *Zsamba*, 56 F.Supp.2d at 1210. For example, whether the legal incidence of the tax falls on the Winnebago Tribe or the Kansas Tribes for sales made on reservation land is certainly a question that presents fair ground for litigation. Further, if indeed it is necessary for the court to eventually "balance the interests" of the parties, whether the state can tax fuel that is allegedly manufactured on tribal lands and later sold to another tribe on its reservation also raises a serious question for litigation.

Because plaintiffs have shown the necessary requirements for issuance of a preliminary injunction, plaintiffs' motion is granted.

### E. *Younger* abstention

■ Even if plaintiffs make the necessary showings for a preliminary injunction, defendants strongly urge the court to refrain from deciding the issues presented in this case. Defendants contend that the *Younger* abstention doctrine applies as a bar to federal intervention. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Pursuant to the *Younger* abstention doctrine, a federal court should abstain from hearing a case if the following three criteria are met: (1) state judicial proceedings are ongoing; (2) the state proceedings implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues. *Seneca–Cayuga Tribe v. Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989).

■ Although plaintiffs Blackhawk, Hradec, and Morgan have pending criminal actions against them in state court, this case is not proper for abstention. Whether the state can tax the sale of fuel between the Winnebago Tribe and the Kansas Tribes is a matter of federal, not state law. *See Manufacturing Tech.*, 523 U.S. at 756, 118 S.Ct. 1700 (finding that tribal immunity is a matter of federal law); *Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535 (9th Cir.1994) (finding *Younger* abstention was inappropriate where the threshold issue was whether the state had jurisdiction to prosecute Indians pursuant to state gaming laws); *Fort Belknap Indian Community v. Mazurek*, 43 F.3d 428, 432 (9th Cir.1994) (refraining from abstention and holding that whether Montana has jurisdiction to prosecute Indians in state court for violations of state liquor laws is an issue of federal law); *Seneca–Cayuga Tribe*, 874 F.2d at 714 (finding that when a state court is asked to decide issues of federal law "in an area in which federal interests predominate, the state's interest in the litigation is ... not important enough to warrant *Younger* abstention.").

The court is not persuaded by the Attorney General's argument that the federal

court is imposing on her right to initiate prosecution. The Attorney General is being asked to stay the state proceedings, not terminate them. If indeed the final outcome of this case is favorable to defendants, the Attorney General may proceed with her actions. If, however, the injunction does not issue, the individual plaintiffs were prosecuted and convicted, and the result of this litigation was ultimately favorable to plaintiffs, plaintiffs would needlessly have been put through the personal and financial toll of an unwarranted criminal prosecution. While the defendants assert the individual plaintiffs could raise the issues presented here as defenses in state court, the court reaffirms its position that whether or not the state may properly collect fuel tax from plaintiffs is a matter of federal law that is properly decided in federal court.[12]

■ Defendants are particularly adamant that the seized property not be returned. They argue that the property serves as evidence in the state criminal proceedings and as security in the event of an eventual judgment against plaintiffs. The court finds that there is no intrinsic evidentiary value in the seized property. The court further finds that there is no indication that defendants will not be able to collect a judgment against plaintiffs if one is imposed at some point. Thus, in an effort to restore plaintiffs to the position they were in prior to the time defendants began enforcing the Act, the seized property shall be returned.

## F. Bond

Defendants have filed a motion requesting the court to set bond to secure the injunctive order. Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, a preliminary injunction may not issue unless security is given by the applicant "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Defendants seek a bond in the range of $2,057,937.04 to $2,129,937.94. Defendants also seek to have the amount of the bond increased by $200,000 each month defendants are enjoined from collecting the motor fuel tax.

■ According to the Tenth Circuit, "a trial court may, in the exercise of discretion, determine a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm.'" *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir.1987) (quoting *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir.1964)). After considering defendants' motion for bond, the court finds there is "an absence of proof showing a likelihood of harm." There is no indication that plaintiffs will be unable to pay a tax judgment in the event that one is incurred. Defendants have noted that plaintiffs have substantial gaming operations and other sources of revenue. (Mem. Supp. of Mot. for Bond or Other Security at 5). Presumably these sources of revenue will be available to pay outstanding taxes if indeed it is found that plaintiffs are subject to the tax at issue in this case. Thus, the court finds there is no proof that defendants are likely to suffer harm. Consequently, defendants'

---

**12.** Because the court finds that this case is not proper for *Younger* abstention, it is unnecessary to make findings as to plaintiffs' contention that defendants acted in bad faith or for the purpose of harassment. *See Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (noting that even if all three conditions necessary for *Younger* abstention are present, abstention may still be inappropriate if the "the state proceeding is motivated by a desire to harass or is conducted in bad faith").

motion shall be denied, and plaintiffs will not be required to post a bond.

**IT IS THEREFORE BY THIS COURT ORDERED** that:

1. Plaintiffs' Motion for a Preliminary Injunction (Doc. 18) is hereby granted. Defendants are enjoined from enforcing any provision of the Kansas Motor Fuel Tax Act, Kansas Statutes Annotated, §§ 79–3401 *et seq.*, as to transactions between the Winnebago Tribe and HCI and Sac and Fox Nation of Missouri, Iowa Tribe of Kansas and Nebraska, and Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas. To this end, defendants shall refrain from making any further seizures of plaintiffs' property pursuant to the Act.

2. Defendants are enjoined from proceeding with the criminal actions pending against plaintiffs HCI, John Blackhawk, and Lance Morgan and HCI employee, James Knox. The Attorney General is enjoined from prosecuting anyone engaged in transactions occurring between the plaintiffs so long as the transactions are occurring as they were before defendants began enforcing the Act.

3. Defendants are ordered to take all necessary steps to facilitate the return of property seized from plaintiffs. Defendants are entitled to make copies of the seized log books before they are returned. Plaintiffs are ordered to notify the Attorney General's office if the seized equipment is being used in a manner inconsistent with the routes employed by HCI prior to defendants' attempted enforcement of the Act.

4. This injunction shall be effective until such time as plaintiffs' claims have been adjudicated on their respective merits or until further order of this court.

5. Defendants' motion for bond (Doc. 66) is denied.